UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
DORA CHAMPION, Individually and as Mother and
Guardian of GC, a minor child of 16 years of age,

                                   *Plaintiff/Claimant*

-*against*-                                           **COMPLAINT**

OVZIE CANNON,
BERNARD JOHNSON, Caseworker,
EDWARD FIGUEROA, Superintendent at BRC,       Index No.:
LOSECA AUSTRAL, PREA Compliance Manager at BRC,
TIFFNEY NIERKOWSKI, Health Service Administrator at
BRC, "JOHN DOES" 1 - 10 and "JANE DOES" 1 – 10 such
persons being employed as Staff, Supervisors, and/or
Administrators at the BRENTWOOD RESIDENTIAL
CENTER during the time "GC" was a resident at that facility,
"John or Jane Poe", Superintendent at HTRC,
"John or Jane Loe", Health Service Administrator at HTRC,
and "JOHN NOES" 1-10 and "JANE NOES" 1-10, such
persons being employed as Staff, Supervisors, and/or
Administrators at the HARRIET TUBMAN RESIDENTIAL
CENTER during the time "GC" was a resident at that facility.

                                  *Defendants*
_____x

Plaintiff DORA CHAMPION, Individually and as Mother and Guardian of GC, a female minor

child of 16 years, ("Plaintiff") by her attorneys HEILIG BRANIGAN, LLP, as and for her Verified

Complaint against defendants OVZIE CANNON in his capacity as Youth Services Specialist at

Brentwood Residential Center ("Cannon"), EDWARD FIGUEROA, in his capacity as

Superintendent of Brentwood Residential Center ("Figueroa"), LOSECA AUSTRAL, in her

capacity as PREA Compliance Manager of Brentwood Residential Center ("Austral"), TIFFNEY

NIERKOWSKI in her capacity as Health Service Administrator of Brentwood Residential Center

("Nierkowski"), and "JOHN DOES 1 – 10" and "JANE DOES 1 – 10" such persons being

employed as Staff, Supervisors, and/or Administrators at the Brentwood Residential Center during

the time GC was confined as a resident at that facility, "John or Jane Poe", Superintendent at

HTRC, "John or Jane Loe", Health Service Administrator at HTRC, and "JOHN NOES 1-10" and "JANE NOES 1-10", such persons being employed as Staff, Supervisors, and/or Administrators at the HARRIET TUBMAN RESIDENTIAL CENTER during the time GC was a resident at that facility, (collectively "Defendants"), alleges, upon knowledge with respect to their acts and on information and belief as to other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this civil rights action, after GC, while confined in the custody and under the supervision of Brentwood Residential Center ("BRC"), operated under the auspices of New York State ("New York") and the New York State Office of Children and Family Services ("OCFS"); was groomed, raped, sexually exploited, sexually harassed, impregnated and drugged by Ovzie Cannon while he was employed as a Youth Support Specialist ("YSS") by BRC, OCFS and New York.

2. On numerous occasions between January and February 2023, Ovzie Cannon ("Cannon"), in his capacity as Youth Support Specialist and employee, and while he was working at Brentwood Residential Center, an in-patient Residential Center for female children between the ages of twelve and eighteen years of age, and overseen by OCFS, ignored all prescribed duties and rules of his trusted position, to solicit and perform sexual relations with GC, a minor child under 16 years of age.

3. The incidents alleged herein have been investigated by the New York State Justice Center for the Protection of People with Special Needs ("Justice Center"), and their findings have been included as **Exhibit "A"** to the instant Complaint.

4. There has been and continues to be a high rate of sexual abuse of women in custody by

prison/facility staff.[1]

5. GC is particularly vulnerable to sexual victimization, having met the criteria for confirmation as a human trafficking victim in New York State by the Office of Temporary and Disability Assistance ("OTDA").   GC has an intellectual disability and mental illness, and has been victimized by sexual abuse and exploitation since she was 14 years old.

6. On or about October 7, 2022, GC was declared a juvenile delinquent by the New York State Family Court – Suffolk County.

7. As a result of the Court's findings, on November 26, 2022, GC was remanded to the custody of OCFS/BRC for an indeterminate amount of time.

8.   On November 29, 2022 GC turned 15 years old.

9. The BRC facility is a residential care center for females between the ages of 12 and 18 years of age.

10. BRC is located on a 40-acre campus, comprised of buildings, athletic fields and a picnic area, and is accredited by the American Correctional Association.  The inhabitants ("residents") are offered educational programming which meets New York State Education Department Guidelines. Alternative High School programs and Test Assessing Secondary Completion pursuits are also offered to qualified candidates.

11. Youth counseling, medical services, job readiness training, recreational activities, mental health services, and religious services are all available to the inmates, on site.

---

[1] Chandra Bozelko, *Sexual Violence in Women's Prisons Reaches "Constitutional Proportions." Will Lawmakers Step In?*, Ms. Magazine (April 23, 2020); https://msmagazine.com/2020/04/23/sexual-violence-in-women's-prisons-reaches-constitutional-proportions-will-lawmakers-step-in/ "Incarcerated women are 30 times more likely to be raped than free women. Even though women account for less than 10 percent of inmates, their reports account for three-quarters of assaults, and almost three quarters of staff are men.")

12. The facility is low security, but self-contained. Family members may visit the inmates on weekends, but the inmates do not typically leave the grounds, except in special circumstances.

13. All inmates at BRC must attend counseling sessions.

14. In December 2022, while a resident at BRC, GC expressed thoughts of self-harm and suicide, and was put on "suicide watch".

15. Despite knowing of the high risk of sexual abuse of female prisoners in general, and the especially significant risk to GC due to her OTDA status, BRC brought on staff Cannon, a male YSS, specifically to conduct one-on-one supervision with GC.

16. Upon information and belief, prior to his employment as a YSS, Cannon had a criminal record as a convicted violent offender.

17. Upon information and belief, in 2006 Ovzie Cannon was convicted of Attempted Robbery in the Second Degree, a Class D Violent Felony.

18. Upon information and belief, Ovzie Cannon was sentenced to, and served, a two-year sentence for the above referenced conviction at Willard Drug Treatment Center ("Willard DTC").

19. Willard DTC was a specialized state prison, closed since March 2022, which specialized in treatment for drug-addicted convicts.

20. On the New York State OCFS website employment section, under the description of a Youth Support Specialist, it reads, in part:

> **Background Investigation/Justice Center Review**
> Prospective appointees will be:
> - checked against the Staff Exclusion List (SEL) maintained by the Justice Center for the Protection of People with Special Needs. Prospective employees whose names appear on the SEL as having been found responsible for serious or repeated acts of abuse or neglect will be barred from appointment and may have their names removed from the eligible list(s) for the title(s) if applicable;
>
> - investigated through a Criminal Background Check (CBC). All convictions must be reported. **Conviction of a felony or misdemeanor or any falsified or omitted information may bar appointment or result in removal after appointment**

4

*(emphasis added)*. Each case will be determined on its own merits, consistent with the applicable provisions of state and federal laws; Prospective employees will be fingerprinted in order to obtain a record of their criminal history information, and may be required to pay any necessary fees; and . . .

21. Upon information and belief, one-on-one supervision involves only the YSS and the resident (in this case, GC). The YSS is able to have frequent unmonitored sole access to the resident for significant periods of time, including at night, with no supervision or oversight of any sort.

22. Upon information and belief, Cannon began grooming GC immediately upon introduction, telling her she "was cute' and she 'reminded him of his daughter'.

23. Upon information and belief, shortly after beginning one-on-one counseling, Cannon began making sexual overtures to GC.

24. At all relevant times herein, GC was a minor child, under the age of 16 years, away from home and in the custody of BRC, away from everything and everyone she knew.

25. Cannon continued his attentions to GC, beginning a systematic assault of rape, sexual exploitation, sexual harassment, battery and general child endangerment.

26. Cannon both threatened and provided rewards to GC to ensure her silence.

27. The rewards received by GC from Cannon included (1) allowing GC the use of his cellphone and (2) supplying GC with 'edibles', food products containing cannabinoids, neither of which are allowed by BRC rules.

28. The threats entailed removal of those rewards.

29. Upon information and belief, Cannon raped GC on a daily basis, approximately 47 times.

30. On or about February 18, 2023, GC informed her mother/guardian Dora Champion, that "another girl" had been raped at BRC by a male staff member and that the girl was afraid to tell anyone. Plaintiff told GC that the other girl should tell someone at the facility immediately.

31. The next day, GC relayed to her mother/guardian that she was, in fact, the "other girl", that she had informed personnel at the facility, and that she had been raped every day since meeting Cannon and having him take over her care.

32. Plaintiff contacted GC's caseworker, Bernard Johnson, and the New York State Justice Center for the Protection of People with Special Needs ("Justice Center"), and informed them of GC's claims.

33. On February 20, 2023, Plaintiff was notified that GC had been given a urine drug test, but it was inconclusive and would be repeated the following day.

34. Plaintiff was also informed that a blood test and pregnancy test would be administered to GC on February 21, 2023.

35. As a result of those tests, it was discovered that GC was pregnant.

36. GC was immediately released to Plaintiff's custody.

37. At the time of her release from BRC, GC was 6 ½ weeks pregnant, although she had been in BRC custody for three (3) months.

38. GC endured a clinical abortion on March 18, 2023.

39. On March 27, 2023 Cannon was indicted on five (5) criminal counts in Suffolk County New York Criminal Court in the matter of <u>People v. Cannon</u>, IND. # 70767-23. Cannon was accused of two (2) counts of Rape in the Third Degree, a Class E Felony, two (2) counts of Criminal Sexual Act in the Third Degree, a Class E Felony, and a single count of Endangering the Welfare of a Child, a Class A Misdemeanor.

40. On December 1, 2023, before the Honorable Karen M. Wilutis, Ovzie M. Cannon pled guilty to one count each of Rape in the Third Degree, Criminal Sexual Act in the Third Degree, and Endangering the Welfare of a Child.

41. On January 17, 2024, Ovzie Cannon was offered the chance to speak prior to his sentencing. Cannon apologized to the Court and to OCFS for his crimes. After being reminded by the Court, he also apologized to his victim, who was unnamed.

42. Cannon was sentenced for his crimes as follows: COUNT 1- Rape in the Third Degree - two and a half years in prison followed by 10 years post-release supervision; COUNT 3 – Criminal Sexual Act in the Third Degree – two and a half years in prison followed by 10 years of post-release supervision; COUNT 5 – Endangering the Welfare of a Child – 364 days in jail. All sentences are to run concurrently. Cannon was also required by the Court to sign a permanent Order of Protection requiring him to stay away from GC through July 17, 2044. A copy of the Certificate of Conviction in that case is attached to this Complaint as **Exhibit "B"**.

43. Plaintiff and GC seek to vindicate their constitutional rights through this action.

## PARTIES

44. At all times herein, Dora Champion is and was the legal guardian of GC, a minor child of 16 years of age.  Dora Champion maintains a residence in Amityville, New York.

45. At all times herein, GC was and is a minor child of 16 years of age, whose permanent home is with Dora Champion, her legal guardian.

46. At the time of the occurrences at BRC related herein, GC was a minor child of 15 years of age, under the care and custody of New York State, the Office of Children and Family Services, the Brentwood Residential Center.

47. At all times herein, New York State is and was a governmental entity.

48. At all times herein, OCFS is and was a department of the New York State government, charged with overseeing the well-being of, among other things, at-risk young people within the geographic region of New York State, that operates under the control and direction of the State.

7

49. At all times herein, BRC is and was a residential treatment community, predominantly for the care of female minor children between 12 and 18 years of age, who have been adjudicated juvenile delinquents.

50. At all times herein, HTRC is and was a residential treatment community, predominantly for the care of female minor children between 12 and 18 years of age, who have been adjudicated juvenile delinquents.

51. At all times herein Bernard Johnson (Johnson) was and is a Caseworker employed by the Office of Children and Family Services.

52. At all times herein, Edward Figueroa ("Figueroa") was and is the Superintendent/ Director/ Administrator of BRC.

53. At all times herein, Loseca Austral ("Austral") was and is the Facility PREA Compliance Manager of BRC.

54. At all times herein, Tiffney Nerkowski ("Nerkowski") was and is the Facility Health Service Administrator of BRC.

55. At all times herein, Figueroa, Austral and Nerkowski were and are the chief administrators of BRC, responsible for the physical and mental well-being of the inmates of that facility.

56. The BRC is operated by OCFS under the auspices of New York State.

57. At all times herein, minor child GC was entrusted to the care of BRC, and later of HTRC, by order of the New York State Family Courts.

58. At all times herein, Ovzie Cannon was an individual over the age of eighteen years and was employed by New York State, the Office of Children and Family Services, and the Brentwood Residential Center as a Youth Support Specialist.

59. At all times herein, John Does 1 – 10 and Jane Does 1 – 10 were and are Administrators, Supervisors and Staff at Brentwood Residential Center, tasked with protecting and caring for the minor children placed in their charge by New York State and the Office of Children and Family Services.

60. At all times herein, "John or Jane Poe" was the Superintendent at HTRC,

61. At all times herein, "John or Jane Loe", was the Health Service Administrator at HTRC

62. At all times herein, John Noes 1 – 10 and Jane Noes 1 – 10 were and are Administrators, Supervisors and Staff at Harriet Tubman Residential Center, tasked with protecting and caring for the minor children placed in their charge by New York State and the Office of Children and Family Services.

## JURISDICTION AND VENUE

63. This Court has subject-matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §§1331 and 1343(a). This Court has jurisdiction to award nominal, compensatory and punitive damages and attorneys' fees under 28 U.S.C. §2201 and 42 U.S.C. §§1983 and 1988.

64. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because the events giving rise to Plaintiff's claims occurred within the Brentwood Residential Center in Dix Hills, New York, which is in the Eastern District of New York and/or in the Harriet Tubman Residential Center in Auburn, New York which is in the Northern District of New York.

## RELEVANT FACTS

**Sexual Abuse of Women Incarcerated in New York State Prisons**

65. GC was a minor child under the age of 16 years old at the time of these occurrences, certified as a victim of human trafficking, intellectually disabled and with a history of mental

illness. When she expressed suicidal thoughts during counseling, BRC and the OCFS brought on staff a male counselor to treat GC one-on-one, and allowed him full, unfettered access to GC with no supervision, either personal or via recordings of their meetings.

66. Inmates in New York State, like many prisoners in the United States, are at risk of sexual abuse from prison staff, a majority of whom are men. An even greater proportion of the supervisory staff is men. Notably, as reported in the Department of Corrections and Community Services Report entitled "Annual Report on Sexual Victimization 2013 – 2017"[2], at one correction facility alone there were criminal charges of rape filed against 9 different corrections staff members during the reporting period.

67. Because of the risk and incidence of sexual abuse and retaliation in prison settings[3], the federal government, the District of Columbia, and all 50 states have enacted statutes criminalizing any sexual contact between prisoners and correctional staff, See, e.g., NY Penal Law §130.05(3)(e).  Awareness of the risk of custodial sexual abuse led to the enactment of the Prison Rape Elimination Act ("PREA"), 34 U.S.C. 30301 et seq. (2003).

68. Female prisoners are a particularly vulnerable population and face a heightened risk of sexual abuse by male officers[4]. As many as 60 to 80 percent of women prisoners have been physically or sexually abused prior to their incarceration[5].

69. A 2014 Bureau of Justice Statistics report on a survey of prisoners at prisons around the

---

[2] DOCCS, *Annual Report on Sexual Victimization: An Analysis of 2013 – 2017 Sexual Abuse and Sexual Harassment Data;* Appendix A (May 2020), https://docs.ny.gov/system/files/documents/2020/06/annual-report-on-sexual-victimization-2013-2017_final.pdf (hereinafter DOCCS, 2013-2017 Report).

[3] "More than 80,000 prisoners each year are sexually victimized during incarceration but only about 8% report victimization to correctional authorities." Sheryl P. Kubiak et al., *Sexual Misconduct in Prison: What Factors Will Affect Whether Incarcerated Women Will Report Abuses Committed by Prison Staff?*, 41 Law and Hum Behav. 361, 361 (2017).

[4] Supra note 8 at 362.

[5] Alison Hastings et al.; *Keeping Vulnerable Populations Safe Under PREA: Alternative Strategies to the Use of Segregation in Prisons and Jails*, (April 2015)

country found that five of the seven DOCCS prisons surveyed reported staff sexual misconduct rates above the national average[6].

70. There were at least seven (7) pregnancies of DOCCS inmates conceived with DOCCS staff between 2000 and 2013[7].

71. Female prisoners are disproportionately victims of staff sexual misconduct in DOCCS prisons and women known to have intellectual disabilities or psychiatric conditions are most victimized, because DOCCS staff count on these women to be seen as less credible.

**Brentwood Residential Center 2022 PREA Report**

72. In the BRC PREA Facility Audit Report-2022, BRC was rated on compliance with the National Prison Rape Elimination Act standards.  The purpose of these standards is to eliminate rape, sexual assaults, and sexual harassment from the prison/facility system. At that time, BRC was found to be in general compliance with the rules and standards. The 2022 PREA Report is attached hereto as **Exhibit "C"**.

73. However, Page 22, paragraph 1 of the BRC-PREA states: "Video Surveillance and Staffing Plan must be completed . . . each year".  It goes on to state: In determining adequate staffing levels and the need for video monitoring, facilities must take into consideration: "[5] all components of the facility's physical plant (including "blind spots and/or areas where staff or youth may be isolated").

74. BRC is equipped with 66 video surveillance cameras, with 14 of those cameras located outdoors around the facility.

75. There are 4 monitors in the control room and staff to review these cameras 24 hours a day,

---

[6] David Reutter, *Staff-on-Prisoner Sexual Abuse Persists in New York Prisons, Prison Legal News (Feb. 3, 2016),* http://www.prisonlegalnews.org/news/2016/feb/3/staff-prisoner-sexual-abuse-persists-new-york-prisons/.
[7] Alysia Santo, *Raped Behind Bars,* Albany Times Union (Sept. 9, 2013), http://www.timesunion.com/local/article/raped-behind-bars-4795883.php#page-1

seven days a week.

76. In addition, both Defendants Figueroa and Nierkowski have access to the monitor feeds from their office computers.

77. Yet, in some fashion, Defendant Cannon was still able to isolate GC on a daily basis for the purpose of raping and sexually abusing her, and was able to provide her with his cellphone and cannabinoids without anyone noticing.

78. In the same PREA Report, on page 23, section (e), states that "Intermediate level or higher level supervisors **must conduct and document unannounced rounds** (emphasis added) to identify and deter staff sexual abuse and sexual harassment.  Such unannounced rounds must be implemented for all shifts (day and night). Facility staff are prohibited from alerting other staff members that these supervisory rounds are occurring, unless these announcements are related to legitimate operational functions of the facility."

79. Again, Defendant Cannon was able to rape, sexually assault and sexually harass GC on a daily basis for almost two months, and neither his absence, nor hers, were noted or questioned by staff and/or supervisors.

**Plaintiff was at High Risk of Sexual Assault Upon Entering BRC**

80. Although under the age of 16 years old when incarcerated at BRC, GC had a previous history of being sexually abused.  GC has an intellectual disability and suffers from mental illness. She was certified in November of 2022 as a Victim of Human Trafficking by New York ODTA. GC receives medication and counseling to assist her in dealing with her mental health issues.

81. In enacting PREA in 2003 Congress found that experts conservatively estimate that at least 13 percent of United States inmates have been sexually assaulted, many repeatedly.  Congress

further found that inmates with mental illness are at increased risk of sexual victimization[8].

82. To address these concerns, Congress established the National Prison Rape Elimination Commission to establish a set of national standards for detecting, preventing, reducing and punishing prison rape.

83. The National PREA Standards were published in 2009 and became effective on August 12, 2012[9].

84. Under the National PREA standards, inmates should be screened at intake, initial classification, and all subsequent reviews to determine the risk of their becoming a victim. They are evaluated based on 1) whether there is a physical or mental disability; 2) their physical build; 3) prior history of victimization; and 4) the inmate's own sense of vulnerability[10].

**Defendants Cannon, Figueroa, Austral, Nierkowski and John and Jane Does Were Aware of the Risk of Sexual Abuse to Female Inmates.**

85. The BRC-PREA Report, on page 24, discusses "Limits to cross-gender viewing and searches". Specifically, the BRC-PREA makes clear that, "Except in emergency situations, personal searches must be conducted by staff of the same gender as the inmate being searched." In the case of BRC, which only houses female inmate/residents, **only** females may perform personal searches, and contraband inspections.  The Report goes on to state that "Opposite gender viewing of youth under circumstances when breasts, buttocks, or genitalia would normally be exposed (shower/hygiene time, performing bodily functions, and changing clothes) is prohibited. Male staff must announce their presence on entering living areas by announcing "Male on the unit" or stating their name loud enough for all to hear.

---

[8] 34 U.S.C. §30301
[9] U.S. Dep't of Just., *Implementing the PREA Standards, Protecting Inmates, and Safeguarding Communities,* 5, https://bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/BJA-2008-1720.pdf.
[10] 28 C.F.R. §115.41.

86. When GC was placed on "suicide watch" at BRC, the decision was made to bring in an additional Youth Services Specialist to work with her one-on-one. The decision was made to bring in Cannon. The State's guidelines, as outlined in Paragraph 19 above, require background checks for a Youth Support Specialist. Upon information and belief, Cannon has a record as a violent offender, but was still assigned to work one-on-one with GC.

87. Upon information and belief, one-on-one treatment meant that GC's care and treatment was under the control of Cannon, without video or personal supervision. Cannon had virtually unlimited access to GC.

88. Defendants were or should have been aware that Congress enacted PREA in 2003 to address and reduce the high risk of sexual assault in prison.

89. Defendants were or should have been aware that New York enacted N.Y. Penal Law §130.05(3)(e) to address the high rate of sexual assault within New York prisons and correctional facilities. This statute makes clear that an inmate/resident cannot legally consent to any sexual act with DOCCS staff, and it criminalizes any sexual activity between DOCCS staff and an inmate/resident.

90. Defendants were or should have been aware that DOCCS has a "zero tolerance" policy for sexual activity with or sexual harassment of an inmate/resident.

91. Defendants were or should have been aware that they have an obligation under PREA to lessen the risk of sexual assault, exploitation and harassment of female inmates/residents within their facilities.

92. Defendants were or should have been aware that certain characteristics render inmates/residents more vulnerable to sexual abuse in prison, including mental health issues, cognitive disabilities, and prior experience of abuse, all of which characteristics were and are

present in GC.

**Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does Failed to Enforce Policies to Prevent Sexual Abuse by Staff and Failed to Enforce Existing Policies**

93.Defendants Figueroa, Austral, Nierkowski and John Does and Jane Does knew or should have known that there were guidelines in place to prevent the occurrence of sexual abuse of inmates, but they failed to follow their own guidelines.

94.Despite knowing the risk and frequency of sexual misconduct by staff inherent in the corrections system, Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does recklessly disregarded those risks and failed to protect GC from harm.

95.Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does inadequately supervised and trained staff, thereby placing female inmates/residents at a heightened risk of sexual assault and abuse.

96.Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does failed to enact new policies or enforce existing policies intended to protect female inmates/residents from sexual abuse by staff.

97.Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does supervised male staff behavior with female inmate/residents no differently from the way they would supervise same-gender supervision of inmate/residents, and failed to provide any specific training for staff on how to manage female inmate/residents.

98.Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does permitted male staff unfettered access to female inmate/residents in unmonitored areas for extended periods of time.

99.Upon information and belief, Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does failed to implement BRC-PREA measures to reduce the risk of sexual misconduct between male staff and female inmate/residents, and to prevent misconduct from occurring,

escalating or continuing. These include but are not limited to measures such as real-time video review of video camera feeds; periodic review of camera footage; use of electronic recording devices; and, of utmost importance, frequent, varied and unannounced rounds by supervisory officials.

100. To the extent where Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does required installation and use of surveillance cameras, the use of those cameras for supervision and/or investigation was grossly inadequate to protect GC.

101. For areas for which there are privacy concerns, such as medical units, clinics, bathing rooms, bedrooms, etc., Defendants, Figueroa, Austral, Nierkowski, John Does and Jane Does allowed Cannon virtually unlimited access to GC, with no female staff monitoring the areas and no unannounced rounds by supervisory officials.

102. Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does failed to prohibit male staff from being alone with GC in isolated, unmonitored areas where sexual abuse is easily accomplished.

103. Upon information and belief, Defendants Figueroa, Austral, Nierkowski, John Does and Jane Does failed to enforce adequate rules and policies that dictated the content and substance of limited supervisory rounds.

104. Upon information and belief, there is no requirement in place that supervisory staff must see each staff member on duty, check in verbally with staff, speak with inmates or ask if they have problems, or any requirement that supervisors observe the entire area, inmates and staff for any misconduct, or make any notations on what they observe.

105. Upon information and belief, supervision did not include observation and counseling or discipline for staff evincing warning signs of sexual abuse, including engaging in personal

conversations with inmate/residents and sharing personal items with inmate/residents.

106. Defendants, Figueroa, Austral, Nierkowski, John Does and Jane Does failed to require and perform unpredictable supervisory rounds. Supervisors routinely conducted rounds in a predictable manner, failing to vary their time, frequency and point of entry, leaving staff able to predict periods of time when they could be virtually assured that they could engage in misconduct with inmates without being discovered.

**Harriet Tubman Residential Center**

107. Months after GC was released to the custody of her mother/guardian due to her pregnancy, the Court placed GC at HTRC to continue her confinement as an adjudicated juvenile delinquent.

108. Since her arrival at HTRC GC has been subjected on occasion to physical abuse, neglect and inappropriate restraint.

109. To date, Plaintiff has received three (3) separate notifications of instances constituting abuse, neglect and inappropriate restraint, from the New York State Justice Center for the Protection of People with Special Needs ("Justice Center").

110. In each instance, GC was a minor child of 16 years of age or younger.

<u>**JUSTICE CENTER INVESTIGATION A-1**</u>

<u>**Incident date 2/20/23 - BRC**</u>

111. The Justice Center investigated the allegation of Category 1 Sexual Abuse against Cannon and the allegation against Cannon was SUBSTANTIATED (see Exhibit A1, allegation 1) in that GC was found to have been subjected to sexual contact and/or conduct in violation of Article 130 of the New York State Penal Law.

112.The Justice Center investigated the allegation of Category 2 Neglect against Cannon and the allegation against Cannon has been held SUBSTANTIATED (see Exhibit A1, allegation 2) in that Cannon failed to maintain professional boundaries with GC.

113.The Justice Center investigated the allegation of Category 2 Neglect against Brentwood Rehabilitation Center and the allegation against BRC was SUBSTANTIATED due to "substantial systemic problems were identified during the investigation including inadequate management, training and supervision that exposed GC to harm or risk of harm" (see Exhibit A1, allegation 3).

114.It should be noted that there were an additional 19 allegations addressed in the report of the February 20 2023 incident each marked "Unsubstantiated", and all alleging either "Neglect" or "Obstruction".

## JUSTICE CENTER INVESTIGATION A-2

### Incident date 7/20/23- HTRC

115.The Justice Center investigated the allegation of Category 2 Deliberate Inappropriate Restraint against John Doe and/or Jane Doe and the allegation was SUBSTANTIATED (see Exhibit A2, allegation 1) in that GC was found to have been subjected to excessive force and/or inappropriate technique by a Custodian[11].

116.The Justice Center investigated the allegation of Category 2 Neglect against John Doe and/or Jane Doe and the allegation has been held SUBSTANTIATED (see Exhibit A2, allegation 2) in that the Custodial party was found to have failed to follow agency policy in caring for GC.

117.The Justice Center investigated the allegation of Category 2 Physical Abuse against John Doe and/or Jane Doe and the allegation against the Custodial Party was SUBSTANTIATED

---

[11] Please note: In the case of reports of the Justice Center investigations the term "Custodian" should be read to indicate "Staff, Supervisor and/or Administrator".

in that the party "grabbed, lifted GC and/or "body-slammed"/dropped her (see Exhibit A2, allegation 3).

118.It should be noted that there were an additional 2 allegations addressed in the report of the July 20, 2023 incident, each marked "Unsubstantiated" and alleging "Deliberate Inappropriate Restraint" and "Physical Abuse"

## JUSTICE CENTER INVESTIGATION A-3

### Incident date 11/5/023

119.The Justice Center investigated the allegation of Category 2 Deliberate Inappropriate Restraint against John Doe and/or Jane Doe and the allegation was SUBSTANTIATED (see Exhibit A-3, allegation 1) in that GC was found to have been subjected to excessive force and/or inappropriate technique by a Custodian.

120.The Justice Center investigated the third allegation of Category 2 Deliberate Inappropriate Restraint against John Doe and/or Jane Doe and the allegation was SUBSTANTIATED (see Exhibit A3, allegation 2) in that GC was found to have been subjected to excessive force and/or inappropriate technique by a Custodian.

121.A subsequent, undated progress report from HTRC regarding GC, and believed to be written approximately January 20, 2024, states that GC has been placed in restraints three times since December 17, 2023.

### DAMAGES

122.Each of the aforementioned acts by each Defendant directly and proximately caused GC to suffer the following: violation of civil rights, loss of freedom of expression, loss of enjoyment of freedom of expression, loss of privacy, loss of enjoyment of privacy, loss of personal liberty and freedom to physically move about, loss of enjoyment of personal liberty and freedom to physically

move about, humiliation, emotional and physical injury including a clinical abortion, pain and suffering, and great and extreme mental anguish.

123. CG endures, and continues to endure, substantial pain and suffering due to each and every act and omission of all Defendants, and each of them.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS**
**CANNON, FIGUEROA, AUSTRAL, NIERKOWSKI -**
**JOHN DOES 1-10 and JANE DOES 1-10**
**"JOHN OR JANE POE, JOHN OR JANE LOE,**
**JOHN NOES 1-10 and JANE NOES 1-10**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Fourth Amendment (Excessive Force)**

124. Plaintiff repeats and realleges paragraphs 1 through 123 as if each were more fully set forth herein.

125. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the Fourth Amendment to the United States Constitution.

126. The Fourth Amendment protects GC from the use of excessive force.

127. The unlawful, unwanted, and harmful touching of GC by the Defendants, constituting rape, sexual assault, batteries and excessive force, was without lawful basis, reasonable suspicion, probable cause or warrant, or any recognized exceptions thereto, or justification or excuse, and was thus unreasonable and in violation of GC's Fourth Amendment rights.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
**CANNON, FIGUEROA, AUSTRAL, NIERKOWSKI -**
**JOHN DOES 1-10 and JANE DOES 1-10**
**"JOHN OR JANE POE, JOHN OR JANE LOE,**
**JOHN NOES 1-10 and JANE NOES 1-10**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. §§ 1983, 1988)**
**Conspiracy to Violate Civil Rights**

128. Plaintiff repeats and realleges paragraphs 1 through 127 as if each were more fully set

forth herein.

129. This cause of action arises under 42 U.S.C. §§ 1983 and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth and Fourteenth Amendments to the United States Constitution.

130. Defendants, and each of them. acted as described herein above, in conspiracy with and with the agreement, permission, ratification, and approval of, each other to violate GC's civil rights afforded under the United States Constitution by acts of commission and omission.

131. Among other things, the Defendants acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) jointly act to use excessive force during the detention of GC.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS FIGUEROA, AUSTRAL, NIERKOWSKI - JOHN DOES 1-10 and JANE DOES 1-10 "JOHN OR JANE POE, JOHN OR JANE LOE, JOHN NOES 1-10 and JANE NOES 1-10 VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) Unconstitutional Policy, Custom, or Procedure (Monell)

132. Plaintiff repeats and realleges paragraphs 1 through 131 as if each were more fully set forth herein.

133. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth and Fourteenth Amendments to the United States Constitution.

134. Defendants violated GC's constitutional rights, as alleged *supra*, by creating and maintaining the following unconstitutional customs and practices, *inter alia*

      a. Plaintiff alleges Defendants have a *de facto* policy, custom, or practice of inadequately investigating their employees upon complaints of misconduct or

claims for damages.

b.  Plaintiff alleges Defendants have a *de facto* policy, custom, or practice of failing to discipline, failing to investigate, and of retaining personnel who falsely detain persons in violation of their constitutional rights.

c.  Plaintiff alleges Defendants have a *de facto* policy, custom, or practice of condoning, ratifying, failing to discipline, failing to investigate, and of retaining personnel who use excessive and/or unjustified force upon persons with whom they come into contact in violation of constitutional rights.

d.  Plaintiff alleges that Defendants' policies or customs caused and were the moving force and/or affirmative link behind some or all of the violations of GC's constitutional rights at issue in this case.

e.  Plaintiff believes and therefore alleges that that these policies, practices, customs and procedures are intentional and/or the result of deliberate indifference on the part of Defendants, by and through their decision makers.

135. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to GC.

136. Plaintiff specifically alleges that Defendants' policy, custom, and/or practices, as described herein, were within the control of Defendants and within the feasibility of Defendants to alter, adjust and/or correct, so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff.

137. The Justice Center has investigated the allegation of Category 2 Neglect against Brentwood Rehabilitation Center and the allegation against BRC was SUBSTANTIATED due to substantial systemic problems identified during the investigation including inadequate

management, training and supervision that exposed GC to harm or risk of harm and mitigated individual staff culpability (see Exhibit A, allegation 3).

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS FIGUEROA, AUSTRAL, NIERKOWSKI - JOHN DOES 1-10 and JANE DOES 1-10 VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983) Failure to Train, Supervise, Discipline or Correct

138.Plaintiff repeats and realleges paragraphs 1 through 137 as if each were more fully set forth herein.

139.This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth and Fourteenth Amendments to the United States Constitution.

140.Defendants violated GC's constitutional rights, as alleged *supra*, by creating and maintaining the following unconstitutional customs and practices, *inter alia*

    a. Plaintiff believes and therefore alleges that that Defendants have failed to properly train, supervise, and/or discipline employees, officers, managers, supervisors and staff as to the legal requirements and protections applicable to persons as set forth in the United States and New York State Constitutions and other laws; and

    b. Plaintiff alleges that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of Defendants, by and through their decision makers. These include but are not limited to Defendants and their subordinates, as necessary to further these improper policies, practices, customs and procedures.

141.The foregoing unconstitutional customs and practices were a direct and legal cause of harm to GC.

142. Defendants acted in a supervisory capacity with respect to the incidents involving GC. In that capacity, Defendants acted intentionally, maliciously, in conscious disregard, and/or with deliberate indifference to the rights of GC. Plaintiff believes and therefore alleges that Defendants acted in this manner, at least in part, to avoid liability and financial exposure for the BRC, and to maintain its reputations and the reputation of OCFS.

143. These supervisory failures of Defendants directly caused and contributed to Plaintiff's damages.

144. Plaintiff specifically alleges that Defendants' policy, custom and practice, as described *supra*, was within each of their control and within the feasibility of each of them to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff and GC.

145. The Justice Center has investigated the allegation of Category 2 Neglect against Brentwood Rehabilitation Center and the allegation against BRC was SUBSTANTIATED due to substantial systemic problems identified during the investigation including inadequate management, training and supervision that exposed GC to harm or risk of harm and mitigated individual staff culpability (see Exhibit A, allegation 3).

**FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**FIGUEROA, AUSTRAL, NIERKOWSKI, CANNON–**
**JOHN DOES 1-10 and JANE DOES 1-10**
**EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION**
**Cruel and Unusual Punishment**

146. Plaintiff repeats and realleges paragraphs 1 through 145 as if each were more fully set forth herein.

147. In failing to perform the required background checks on Cannon prior to his employment Defendants acted in an unreasonable manner and violated GC's clearly established constitutional

right to be free from cruel and unusual punishment.

148.In performing the required background checks, but then employing Cannon anyway, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

149.In not properly supervising or overseeing Cannon's care for GC, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

150.In allowing Cannon to have unfettered access to GC at all times and allowing him unlimited unsupervised time with GC, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

151.In failing to protect GC from rape, sexual exploitation and sexual harassment by Cannon, Defendants conduct constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

152.As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

**SIXTH CLAIM FOR RELIEF AGAINST DEFENDANT**
**CANNON**
**EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION**
**Cruel and Unusual Punishment**

153.Plaintiff repeats and realleges paragraphs 1 through 152 as if each were more fully set forth herein.

154.Cannon was brought to BRC specifically to take over the treatment of GC. GC was a troubled youth with thoughts of suicide and self-harm.

155.Rather than treat GC's condition, Cannon used his unsupervised access to GC as an

opportunity to groom, rape, sexually exploit, sexually harass, impregnate and drug GC, an inmate and minor child legally unable to consent to sexual relations with him.

156. In not treating GC's mental health issues Cannon operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

157. In physically and sexually abusing GC, Cannon operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

158. In raping GC throughout January and February 2023, Defendant Cannon acted willfully and wantonly for his own sexual gratification and sadistic purposes.

159. In impregnating GC, Defendant Cannon acted willfully and wantonly for his own sexual gratification and sadistic purposes.

160. There was no penological justification for the conduct set forth herein above.

161. Cannon's conduct was unreasonable and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

162. As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

163. In physically and sexually abusing GC, Cannon's conduct constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

164. The New York State Justice Center for the Protection of People with Special Needs ("Justice Center") has investigated the allegation of Category 1 Sexual Abuse against Cannon and the allegation against Cannon was SUBSTANTIATED (see Exhibit A, allegation 1) in that GC was found to have been subjected to sexual contact and/or conduct in violation of Article 130 of the New York State Penal Law.

### SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS CANNON, FIGUEROA, AUSTRAL, NIERKOWSKI

**JOHN DOES 1-10 and JANE DOES 1-10**
**EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION**
**Failure To Protect**

165. Plaintiff repeats and realleges paragraphs 1 through 164 as if each were more fully set forth herein.

166. In not properly supervising or overseeing Cannon's care for GC, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

167. In allowing Cannon to have unfettered access to GC at all times and allowing him unlimited unsupervised time with GC, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

168. The one-on-one policy followed by BRC, without supervision as in the case of GC, allowed the grooming, rape, sexual exploitation, sexual harassment, and doping of a female minor child to continue for almost two months, and resulted in that minor child's unwanted pregnancy, necessitated a clinical abortion, and deepened GC's psychological and mental health issues.

169. As a direct and proximate result of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

170. In failing to protect GC from rape, sexual exploitation, sexual harassment and drugging by Cannon, Defendants' conduct constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

171. The Justice Center has investigated the allegation of Category 2 Neglect against Cannon and the allegation against Cannon has been held SUBSTANTIATED (see Exhibit A, allegation 2) in that Cannon failed to maintain professional boundaries with GC.

172. The Justice Center has investigated the allegation of Category 2 Neglect against

Brentwood Rehabilitation Center and the allegation against BRC was SUBSTANTIATED due to substantial systemic problems identified during the investigation including inadequate management, training and supervision that exposed GC to harm or risk of harm and mitigated individual staff culpability (see Exhibit A, allegation 3).

### EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### CANNON, FIGUEROA, AUSTRAL, NIERKOWSKI
### JOHN DOES 1-10 and JANE DOES 1-10
### EIGHTH AND FOURTEENTH AMENDMENTS TO THE
### UNITED STATES CONSTITUTION
### Failure To Protect

173. Plaintiff repeats and realleges paragraphs 1 through 172 as if each were more fully set forth herein.

174. Residential supervisors and staff, including contractual staff, have a duty to report any allegations of sexual abuse or sexual harassment of an inmate/resident, and to report any actual knowledge or reasonable belief concerning any incident of sexual abuse, sexual harassment or the existence of an inappropriate relationship between a staff member and an inmate/resident.

175. This duty extends to the point of periodically checking on the whereabouts and occupation of inmate/residents throughout the day, and where and how they are spending their time.

176. Residential supervisors and staff, including contractual staff, have a duty to take reasonable steps to protect inmate/residents in their care and custody and to intervene when the constitutional rights of inmate/residents are violated.

177. Defendants violated this duty when they deliberately failed to keep watch over GC and her daily routine. Care and control of GC was handed to Cannon by the other Defendants, and he used that opportunity to rape, sexually assault, sexually harass and dope GC himself.

178. Defendants violated this duty when they ignored changes in GC's behavior signaling cannabinoid use and sexual activity.

28

179.The deliberate failures and omissions of these Defendants to protect GC were unreasonable and violated Plaintiff's clearly established constitutional right to be free from cruel and unusual punishment.

180.In failing to protect GC from rape, sexual exploitation and sexual harassment by Cannon, Defendants conduct constituted a failure to protect under the Eighth and Fourteenth Amendments of the U.S. Constitution.

181.As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

**NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**CANNON, FIGUEROA, AUSTRAL, NIERKOWSKI**
**JOHN DOES 1-10 and JANE DOES 1-10**
**EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION**
**Failure To Implement Policies and Practices to Avoid Violations of**
**Constitutional Rights and Failure to Train/Supervise Employees**

182.Plaintiff repeats and realleges paragraphs 1 through 181 as if each were more fully set forth herein.

183.At the time of the events at issue Defendants Figueroa, Austral and Nierkowski were aware or should have been aware, of the risk and incidence of sexual abuse and retaliation in prison/facility settings.

184.Defendants were aware of the PREA standards laid out in the policies of BRC.

185.Defendants were or should have been aware of GC's previous history of sexual exploitation and human trafficking.

186.Defendants nevertheless failed to implement or enforce policies to protect GC from sexual abuse, rape, sexual assault and doping by Defendant Cannon.

187.Defendants failed to prevent Cannon from interacting with GC without adequate camera

coverage, recording instruments or supervision.

188. The deliberate failures and omissions of these Defendants to protect GC were unreasonable and violated Plaintiff's clearly established constitutional right to be free from cruel and unusual punishment.

189. In failing to protect GC from rape, sexual exploitation and sexual harassment by Cannon, Defendants conduct constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

190. As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

191. Defendants Cannon, Figueroa, Austral and Nierkowski were deliberately indifferent to the serious risk of sexual violence and harassment of GC, a female minor child under their charge, at the hands of Cannon, an individual who had been charged with her care.

### TENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### FIGUEROA, AUSTRAL, NIERKOWSKI
### EIGHTH AMENDMENT TO THE
### UNITED STATES CONSTITUTION
### Deliberate Indifference

192. Plaintiff repeats and realleges paragraphs 1 through 191 as if each were more fully set forth herein.

193. At the time of the events at issue Defendants Figueroa, Austral and Nierkowski were aware or should have been aware, of the risk and incidence of sexual abuse and retaliation in prison/facility settings.

194. Defendants Figueroa, Austral and Nierkowski were directly and personally responsible for the safety of inmate/residents at BRC.

195. Defendants Figueroa, Austral and Nierkowski were aware of the PREA standards laid out

in the policies of BRC.

196.Defendants Figueroa, Austral and Nierkowski were or should have been aware of GC's previous history of being a victim of sexual exploitation and human trafficking.

197.Defendants Figueroa, Austral and Nierkowski nevertheless failed to implement or enforce policies to protect GC from sexual abuse, rape, sexual assault and doping by Defendant Cannon.

198.Defendants Figueroa, Austral and Nierkowski failed to prevent Cannon from interacting with GC in areas without adequate camera coverage, recording instruments or supervision.

199.Defendants Figueroa, Austral and Nierkowski failed to physically supervise, inspect or oversee areas where GC was being treated by Cannon, even though no cameras were in place in those areas.

200.Defendants Figueroa, Austral and Nierkowski created a custom and unspoken policy, through their actions and failures to act, in which staff did not report and turned a blind eye to warning signs of an improper relationship with and manipulation of GC by Cannon.

201.Defendants Figueroa, Austral and Nierkowski were deliberately indifferent to a serious risk to the safety of all female inmates at BRC, and GC in particular.

202.The deliberate indifference of Defendants Figueroa, Austral and Nierkowski led to the sexual assault of GC.

203.As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical, emotional and psychological harm.

204.Defendants Figueroa, Austral and Nierkowski were deliberately indifferent to the serious risk of sexual violence and harassment of GC, a female minor child under their charge, at the hands of Cannon, an individual who had been charged with her care.

**ELEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
"JOHN OR JANE POE, JOHN OR JANE LOE,**

**JOHN NOES 1-10 and JANE NOES 1-10**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983, 1988)**
**Conspiracy to Violate Civil Rights**

205. Plaintiff repeats and realleges paragraphs 1 through 205 as if each were more fully set forth herein.

206. This cause of action arises under 42 U.S.C. §§ 1983 and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth and Fourteenth Amendments to the United States Constitution.

207. Defendants, and each of them. acted as described herein above, in conspiracy with and with the agreement, permission, ratification, and approval of, each other to violate GC's civil rights afforded under the United States Constitution by acts of commission and omission.

208. Among other things, the Defendants acted in conspiracy and with agreement, permission, ratification, and approval of their joint conduct to (1) jointly act to use excessive force during the detention of GC.

209. In at least three (3) separate incidents the Justice Center has investigated the allegation of Category 2 Deliberate Inappropriate Restraint against employees at Harriet Tubman Rehabilitation Center and the allegation against HTRC was SUBSTANTIATED due to inappropriate technique and/or excessive force used against GC.

**TWELFTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**"JOHN OR JANE POE, JOHN OR JANE LOE,**
**JOHN NOES 1-10 and JANE NOES 1-10**
**VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**
**Failure to Train, Supervise, Discipline or Correct**

210. Plaintiff repeats and realleges paragraphs 1 through 209 as if each were more fully set forth herein.

211. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a

deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth and Fourteenth Amendments to the United States Constitution.

212.Defendants violated GC's constitutional rights, as alleged *supra*, by creating and maintaining the following unconstitutional customs and practices, *inter alia*

    a.   Plaintiff believes and therefore alleges that that Defendants have failed to properly train, supervise, and/or discipline employees, officers, managers, supervisors and staff as to the legal requirements and protections applicable to persons as set forth in the United States and New York State Constitutions and other laws; and

    b.   Plaintiff alleges that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of Defendants, by and through their decision makers. These include but are not limited to Defendants and their subordinates, as necessary to further these improper policies, practices, customs and procedures.

213.The foregoing unconstitutional customs and practices were a direct and legal cause of harm to GC.

214.Defendants acted in a supervisory capacity with respect to the incidents involving GC. In that capacity, Defendants acted intentionally, maliciously, in conscious disregard of, and/or with deliberate indifference to the rights of GC. Plaintiff believes and therefore alleges that Defendants acted in this manner, at least in part, to avoid liability and financial exposure for the HTRC, and to maintain its reputations and the reputation of OCFS.

215.These supervisory failures of Defendants directly caused and contributed to Plaintiff's damages.

216.Plaintiff specifically alleges that Defendants' policy, custom and practice, as described

*supra*, was within each of their control and within the feasibility of each of them to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff and GC.

217. The Justice Center has investigated the allegation of Category 2 Deliberate Inappropriate Restraint used against GC at HTRC in at least three (3) different incidents and the allegations were SUBSTANTIATED (see Exhibit A2 and A3) in that GC was found to have been subjected to excessive force and/or inappropriate technique by a Custodian.

218. The Justice Center has investigated the allegation of Category 2 Neglect as against GC and the allegation has been held SUBSTANTIATED (see Exhibit A2, allegation 2) in that the Custodial party was found to have failed to follow agency policy in caring for GC.

219. The Justice Center has investigated the allegation of Category 2 Physical Abuse used against GC and the allegation against the Custodial Party was SUBSTANTIATED in that the party "grabbed, lifted GC and/or "body-slammed"/dropped her (see Exhibit A2, allegation 3).

220. It should be noted that there were an additional 2 allegations addressed in the report of the July 20, 2023 incident, each marked "Unsubstantiated" and alleging "Deliberate Inappropriate Restraint" and "Physical Abuse"

**THIRTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
"JOHN OR JANE POE, JOHN OR JANE LOE,
JOHN NOES 1-10 and JANE NOES 1-10
VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)
Failure to Train, Supervise, Discipline or Correct**

221. Plaintiff repeats and realleges paragraphs 1 through 220 as if each were more fully set forth herein.

222. This cause of action arises under 42 U.S.C. § 1983, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege, or immunity secured to GC by the First, Fourth

and Fourteenth Amendments to the United States Constitution.

223. Defendants violated GC's constitutional rights, as alleged *supra*, by creating and maintaining the following unconstitutional customs and practices, *inter alia*

    a. Plaintiff believes and therefore alleges that that Defendants have failed to properly train, supervise, and/or discipline employees, officers, managers, supervisors and staff as to the legal requirements and protections applicable to persons as set forth in the United States and New York State Constitutions and other laws; and

    b. Plaintiff alleges that these failures amount to a *de facto* policy and are intentional and/or the result of deliberate indifference on the part of Defendants, by and through their decision makers. These include but are not limited to Defendants and their subordinates, as necessary to further these improper policies, practices, customs and procedures.

224. The foregoing unconstitutional customs and practices were a direct and legal cause of harm to GC.

225. Defendants acted in a supervisory capacity with respect to the incidents involving GC. In that capacity, Defendants acted intentionally, maliciously, in conscious disregard, and/or with deliberate indifference to the rights of GC. Plaintiff believes and therefore alleges that Defendants acted in this manner, at least in part, to avoid liability and financial exposure for the HTRC, and to maintain its reputations and the reputation of OCFS.

226. These supervisory failures of Defendants directly caused and contributed to Plaintiff's damages.

227. Plaintiff specifically alleges that Defendants' policy, custom and practice, as described *supra*, was within each of their control and within the feasibility of each of them to alter, adjust,

and/or correct so as to prevent some or all of the unlawful acts and injury complained of herein by Plaintiff and GC.

228.In at least two (2) separate incidents the Justice Center has investigated the allegation of Category 2 Deliberate Inappropriate Restraint against employees at Harriet Tubman Rehabilitation Center and the allegation against HTRC was SUBSTANTIATED due to inappropriate technique and/or excessive force used against GC.

229.The Justice Center has investigated the allegation of Category 2 Neglect against employees at Harriet Tubman Rehabilitation Center and the allegation against HTRC was SUBSTANTIATED in that employees failed to follow policy in dealing with GC.

230.The Justice Center has investigated the allegation of Physical Abuse against employees at HTRC and the allegation against HTRC was SUBSTANTIATED in that one or more employees grabbed, lifted and/or dropped/body-slammed GC.

**FOURTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
**"JOHN OR JANE POE, JOHN OR JANE LOE,**
**JOHN NOES 1-10 and JANE NOES 1-10**
**EIGHTH AND FOURTEENTH AMENDMENTS TO THE**
**UNITED STATES CONSTITUTION**
**Cruel and Unusual Punishment**

231.Plaintiff repeats and realleges paragraphs 1 through 230 as if each were more fully set forth herein. In failing to protect GC from ill-treatment upon her entry to Harriet Tubman Residential Center, Defendants acted in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

232. In not properly training personnel as to how to treat rebellious or recalcitrant youth, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from cruel and unusual punishment.

233. In not properly supervising or overseeing the care of GC, Defendants operated in an

36

unreasonable manner and violated GCs clearly established constitutional right to be free from cruel and unusual punishment.

234.In failing to protect GC from neglect, inappropriate restraint, and sexual harassment by Defendants employees of Cannon, Defendants conduct constituted cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

235. As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

### FIFTEENTH CLAIM FOR RELIEF AGAINST DEFENDANTS "JOHN OR JANE POE, JOHN OR JANE LOE, JOHN NOES 1-10 and JANE NOES 1-10 EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION Failure To Protect

236.  Plaintiff repeats and realleges paragraphs 1 through 235 as if each were more fully set forth herein.

237.  Residential supervisors and staff, including contractual staff, have a duty to report any allegations of abuse or sexual harassment of an inmate/resident, and to report any actual knowledge or reasonable belief concerning any incident of abuse, sexual harassment or the existence of an inappropriate relationship between staff member and an inmate/resident.

238.This duty extends to the point of periodically checking on the whereabouts and occupation of inmate/residents throughout the day, and where and how they are spending their time.

239.Residential supervisors and staff, including contractual staff, have a duty to take reasonable steps to protect inmate/residents in their care and custody and to intervene when the constitutional rights of inmate/residents are violated.

240.Defendants violated this duty when they deliberately abused GC.

241.Defendants violated this duty when they deliberately restrained GC in improper fashion.

242. Defendants violated this duty when they deliberately failed to keep watch over GC and her daily routine.

243. The deliberate failures and omissions of these Defendants to protect GC were unreasonable and violated Plaintiff's clearly established constitutional right to be free from cruel and unusual punishment.

244. In failing to protect GC from these acts, Defendants conduct constituted a failure to protect under the Eighth and Fourteenth Amendments of the U.S. Constitution.

245. As a direct and proximate cause of these deliberate acts and omissions, GC suffered severe physical and psychological harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a.  Awarding Plaintiffs compensatory damages in an amount to be determined at trial;

b.  Awarding Plaintiffs punitive damages in an amount to be determined at trial but which is sufficient to deter Defendants from future unlawful conduct;

c.  Awarding Plaintiff costs, disbursements and reasonable attorney's fees; and

d.  Granting Plaintiffs such other and further relief as the Court deems just and proper.

Dated: Holbrook, New York
July 18  , 2024

HEILIG BRANIGAN, LLP
Attorneys for Plaintiff/Claimants


PHILIP J. BRANIGAN, Esq.
4250 Veterans Memorial Highway
Suite 111-East
Holbrook, New York 11741
(631) 750-6888

(631) 750-6880 (fax)
hbmlaw@optimum.net

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____x
Dora Champion, Individually
and as Guardian of "GC", a minor child
under the age of 16 years,

                                                                    **VERIFICATION**

                              *Plaintiff/Claimant*

     -against-

OVZIE CANNON,
EDWARD FIGUEROA, Superintendent,
LOSECA AUSTRAL, PREA Compliance Manager,
TIFFNEY NIERKOWSKI, Health Service Administrator,
"JOHN DOES" 1 - 10 and "JANE DOES" 1 – 10 such
persons being employed as Staff, Supervisors, and/or
Administrators at the BRENTWOOD RESIDENTIAL
CENTER during the time "GC" was an inmate at that facility,
"John or Jane Poe", Superintendent at HTRC,
"John or Jane Loe", Health Service Administrator at HTRC,
and  "JOHN NOES" 1-10 and "JANE NOES" 1-10, such
persons being employed as Staff, Supervisors, and/or
Administrators at the HARRIET TUBMAN RESIDENTIAL
CENTER during the time "GC" was a resident at that facility.

                              *Defendants*
_____x

DORA CHAMPION, Individually and as Guardian of "GC", a minor child under the age of 16

years. affirms pursuant to CPLR 2016, and states that she is the Claimant in this action and the

foregoing claim is true to her own knowledge, except as to matters raised upon information and

belief, and as to those matters she believes them to be true. The grounds of her belief as to all

matters not stated upon her knowledge are papers and/or documents in the file.

                                             _____
                                             Dora Champion, Individually
                                             and as Mother and Guardian of GC,
                                             a minor child under the age of 16 years.

Sworn to before me
this 18th day of July 2024

*ELLEN M FRIEDMAN*
ELLEN M FRIEDMAN
Notary Public, State of New York
No. 01FR5045129
Qualified in Suffolk County
Commission Expires August 14, 2027

40

*Case No.:*                          *YEAR*  2024
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
================================================================

**DORA CHAMPION, Individually and as Mother and
Guardian of GC, a minor child of 16 years of age,**

                              *Plaintiff/Claimant*

*-against-*

**OVZIE CANNON,
BERNARD JOHNSON, Caseworker,
EDWARD FIGUEROA, Superintendent at BRC,
LOSECA AUSTRAL, PREA Compliance Manager at BRC,
TIFFNEY NIERKOWSKI, Health Service Administrator at
BRC, "JOHN DOES" 1 - 10 and "JANE DOES" 1 – 10 such
persons being employed as Staff, Supervisors, and/or
Administrators at the BRENTWOOD RESIDENTIAL
CENTER during the time "GC" was a resident at that facility,
"John or Jane Poe", Superintendent at HTRC,
"John or Jane Loe", Health Service Administrator at HTRC,
and  "JOHN NOES" 1-10 and "JANE NOES" 1-10, such
persons being employed as Staff, Supervisors, and/or
Administrators at the HARRIET TUBMAN RESIDENTIAL
CENTER during the time "GC" was a resident at that facility.**

                              *Defendants*
================================================================

**COMPLAINT**

================================================================

**Heilig Branigan LLP**
*Attorneys for Plaintiffs*
**4250 Veterans Memorial Highway, Suite 111 East
Holbrook, New York 11741
631 750-6888**

================================================================

*To :*

*Attorney for*
================================================================
*Service of a copy of the within is hereby admitted.*
*Dated*

                    _____
                              *Attorney for*
================================================================

*PLEASE TAKE NOTICE*

_____    *that the within is a (certified) true copy of a*
NOTICE OF   *entered in the office of the clerk of the within named court on          2024*
  ENTRY

          *that an Order of which the within is a true copy will* be *presented for settlement to the Hon.*
                    *one of the judges of the within named Court,*
_____
NOTICE OF   *at                              , NY*
SETTLEMENT **on**                    *2024 at*   A. M.
  *Dated:*

                         **Heilig Branigan LLP**
                         *Attorneys for Plaintiffs*
              **4250 Veterans Memorial Highway, Suite 111 East
              Holbrook, New York 11741
              631 750-6888**