UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
DORA CHAMPION, Individually and as Mother and Guardian of G.C., a minor child of 16 years of age,

                           Plaintiff,

       -against-

OVZIE CANNON, Youth Services Specialist, BERNARD JOHNSON, OCFS Caseworker, ANITA SAPIO, Facility Manager at BRC, EDWARD FIGUEROA, Facility Director at BRC, LOSECA AUSTRAL, PREA Compliance Manager at BRC, Sarah Chin-Rokanova, R.N., Tiffney Nerkowski Graf, Nurse Administrator at BRC, "JOHN DOES" 1 - 10 and "JANE DOES" 1 - 10 such persons being employed as Staff, Supervisors, and/or Administrators at the BRENTWOOD RESIDENTIAL CENTER during the time "GC" was a resident at that facility.

                          Defendants.
------------------------------------------------------------------ X

Case No.: 2:24-cv-05842

(Seybert, J.) (Tiscione, M.J.)

## MEMORANDUM OF LAW IN SUPPORT OF OCFS DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

LETITIA JAMES
Attorney General of
the State of New York
300 Motor Parkway, Suite 230
Hauppauge, NY 11788

*Of Counsel*

DANA E. BROWN
Assistant Attorney General

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iv

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE ALLEGED FACTS ................................................................2

    I.       Allegations of Sexual Assault at BRC.....................................................2

    II.      Justice Center Investigation 2-20-23 - BRC .........................................3

    III.    BRC PREA 2022 Audit .........................................................................4

PROCEDURAL HISTORY............................................................................................4

STANDARD OF REVIEW ............................................................................................6

    I.       Failure to State a Claim..........................................................................6

    II.      Lack of Subject Matter Jurisdiction ......................................................7

ARGUMENT.................................................................................................................8

    POINT I:      ALL CLAIMS AGAINST THE OCFS DEFENDANTS
                    SHOULD BE DISMISSED FOR LACK OF PERSONAL
                    INVOLVEMENT........................................................................8
                    A.  Personal Involvement is a Prerequisite to an
                        Award Under 42 U.S.C. § 1983 ................................................8

                    B.  The SAC Fails to Adequately Allege Personal
                        Involvement by Any OCFS Defendant ...................................10

                        i.    *Johnson and Chin Lack Personal
                                Involvement* ..............................................................11
                      ii.   *Austral Lacks Personal Involvement*...........................12
                      iii.  *Figueroa and Sapio Lack Personal
                                    Involvement* ..............................................................13
                      iv.  *To the Extent that the SAC Alleges that
                                  the OCFS Defendants Acted with Deliberate
                                  Indifference to GC's Constitutional Rights,
                                  Any Such Claim Fails for the Same
                                  Reason, i.e., Lack of Personal Involvement* .................14

POINT II:    THE CLAIMS GROUNDED DIRECTLY IN THE
             FOURTEENTH AMENDMENT MUST BE DISMISSED
             BECAUSE SECTION 1983 PROVIDES THE EXCLUSIVE
             REMEDY AND, IN ANY EVENT, THOSE CLAIMS
             ARE DUPLICATIVE ....................................................................16

POINT III:   NO PLAUSIBLE FOURTH AMENDMENT CLAIM
             HAS BEEN STATED..................................................................17

POINT IV:    THE SAC ALLEGES MERE NEGLIGENCE, WHICH
             IS NOT A VIABLE BASIS FOR A §1983 CLAIM .....................18

CONCLUSION……….......................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Pages**

*Abreu v. Bascue,*
  2018 WL 11466956 (N.D.N.Y. May 1, 2018)……………………………………………10

*Achtman v. Kirby, McInerney & Squire, LLP*,
  464 F.3d 328 (2d Cir. 2006)..……………………………………………………....…..7

*Alfaro Motors, Inc. v. Ward*,
  814 F.2d 883 (2d Cir. 1987)..……..…………………………………………………...8

*Aramony v. United Way of Am.,*
  949 F. Supp. 1080 (S.D.N.Y. 1996)………………………………………………….12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).....................................................................................7, 8, 17

*Atuahene v. City of Hartford,*
  10 F. App'x 33 (2d Cir. 2001)…..…………………………………………………10

*Banks v. Annucci,*
  48 F. Supp. 3d 394 (N.D.N.Y. 2014)………………………………….................9

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)......................................................................................6, 7

*Castro v. Cty of Los Angeles,*
  833 F.3d 1060 (9th Cir. 2016)………………………………………………..18

*Coleman v. Cuomo*,
  2018 WL 11691448 (N.D.N.Y. May 14, 2018)…………………………………11, 13

*Corazzini v. Litton Loan Servicing LLP,*
  2010 WL 1132683 (N.D.N.Y., Mar. 23, 2010)…..…………………………………..10

*Cooper v. Cook*,
  2020 WL 1923233 (D. Conn. Apr. 21, 2020)……………………………………..16

*Crown v. Wagenstein,*
  1998 WL 118169 (S.D.N.Y. Mar. 16, 1998)……………………………….....…11

*Daniels v Williams*,
  474 U.S. 327 (1986)…………………………………………………………………18

*Darnell v. Pineiro,*
    849 F.3d 17 (2d Cir. 2017)…………………………………………………………...14

*Doe v. Alsaud*,
    12 F.Supp.3d 674 (S.D.N.Y. 2014)…………………………………………….....9, 15

*Gibson v. Pasta City,*
    2023 WL 8188431 (S.D.N.Y. Nov. 27, 2023)……………………………….…...9, 18

*Gonzaga University v. Doe*,
    536 U.S. 273 (2002).......................................................................................................8

*Gordon v. County of Orange,*
    888 F.3d 1118 (9ᵗʰ Cir. 2018)……………………………………….…….....18

*Grullon v. Admin. for Children's Servs.*,
    2021 WL 981848 (S.D.N.Y. Mar. 16, 2021)…………………………….…17, 18

*Hanks v. City of Syracuse,*
    2022 WL 4619877 (N.D.N.Y, Sept. 30, 2022)………………………….……...…9

*Jeffery v. City of New York,*
    2022 WL 204233 (E.D.N.Y. Jan. 24, 2022)……………………………………..14

*Jimenez v. Bisram,*
    2024 WL 3360340, at *4 (E.D.N.Y. July 10, 2024)…………………………….....8

*Kinch v. Artuz*,
    1997 WL 576038 (S.D.N.Y. Sep. 15, 1997)…………………………………..13

*LaBounty v. Coughlin,*
    137 F.3d 68 (2d Cir. 1988)…………………………………………………15

*Landron v. City of N.Y.*,
    2014 WL 6433313 (S.D.N.Y. Nov. 7, 2014)……………………………………12

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)……………………………..………………..7

*Moffitt v. Town of Brookfield*,
    950 F.2d 880 (2d Cir. 1991)…………………………………………………8

*Murray v. New York*,
    2025 WL 370886 (S.D.N.Y. Feb. 2, 2025)…………………………………16

*Nicholson v. Hammond*,
    2016 WL 3369286 (N.D.N.Y. May 19, 2016)......................................................9

*Partee v. Grood,*
    2007 WL 2164529 (S.D.N.Y. July 25, 2007).......................................................9

*Pauk v. Bd. of Trustees of City Univ. of New York*,
    654 F.2d 856, 865 (2d Cir. 1981)…………………………………………..16

*Provost v. City of Newburgh*,
    262 F.3d 146 (2d Cir. 2023)…………………………………………..12

*Purdie v. Mahoney*,
    2005 WL 3050969 (N.D.N.Y. Nov. 14, 2005)...................................................8

*Richardson v. Goord*,
    347 F.3d 431 (2d Cir. 2003)…………………………………………9

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*,
    156 F. Supp. 3d 348 (E.D.N.Y. 2016)……………………...……………16

*Scelsa v. City Univ. of New York*,
    76 F.3d 37 (2d Cir. 1996)……………………………………...…………7

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974)…………………………………………………...12

*Shenandoah v. Halbritter*,
    366 F3d. 89 (2d Cir. 2004)…………………………………………...7

*Smolen v. Wesley*,
    2019 WL 4727311 (S.D.N.Y. Sept. 25, 2019)…………………………………10

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020)………...................................................................8,11

*Verdon v. Consolidated Rail Corp.*,
    828 F. Supp. 1129 (S.D.N.Y. 1993)………………………………………17

*Weston v. Bayne*,
    2023 WL 8435998 (N.D.N.Y. June 28, 2023)…………………………………14

*Wright v. Orleans County*,
    2015 WL 5316410 (W.D.N.Y. Sept. 10, 2015)…………………………………14

*Wright v. Smith*,
   21 F.3d 496 (2d Cir. 1994)…………………………………………………………8

*Zalewski v. T.P. Builders, Inc.*,
   2011 WL 3328549 (N.D.N.Y. Aug. 2, 2011)……………………………………...…...10

**Constitutions**
U.S. CONST. Amend IV………………………………..………………………………...2, 5, 17, 18
U.S. CONST. Amend XIV………………………………………………...…1, 2, 5, 6, 16, 17, 18

**Federal Statutes**
42 U.S.C. §1983....................................................................................1, 2, 5, 8, 9, 13, 16, 17, 18

**Rules**
Fed. R. Civ. P. 12(b)(1) and 12 (b)(6) ...........................................................................1,6,7
Fed. R. Civ. P. 8(a) ...........................................................................................................9

This Memorandum of Law is submitted on behalf of defendant-employees of the New York State Office of Children and Family Services ("OCFS"), namely, Bernard Johnson ("Johnson"), Caseworker, Anita Sapio ("Sapio"), Facility Manager at Brentwood Residential Center ("BRC"), Edward Figueroa ("Figueroa"), Superintendent at BRC, Loseca Austral ("Austral"),[1] Prison Rape Elimination Act ("PREA") Compliance Manager at BRC, and Sara Roccanova-Chin ("Chin"), Registered Nurse (collectively, the "OCFS Defendants") in support of their motion to dismiss the Second Amended Complaint ("SAC") (EDNY Docket Entry ("DE") 48) pursuant to F.R.C.P. 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff, Dora Champion, guardian and biological great-aunt to GC, a juvenile for the relevant time period, brings this action against the OCFS Defendants under 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution for purported violations of GC's constitutional rights based upon the actions of rogue former employee Ovzie Cannon ("Cannon")[2] who, unbeknownst to the OCFS Defendants, sexually assaulted GC while she resided at BRC. This is not the only case arising from Cannon's renegade behavior. In 2024, an earlier companion case was filed in the NYS Court of Claims[3] against the State seeking millions of dollars for the same alleged misconduct and asserting very similar allegations to those contained in the SAC.

While the facts of this case are certainly sympathetic, this Court need not address the merits of Plaintiff's claims because the SAC falls woefully short of the pleading requirements necessary to sustain any claim against the moving defendants. Specifically, as discussed herein, the SAC

---

[1] Austral is no longer employed at OCFS, but the remaining "OCFS Defendants" are still under the State's employ.

[2] The State does not represent Cannon or Defendant Nerkowski-Graf.

[3] Claim No.141903 was filed on March 18, 2024 in the Court of Claims by Plaintiff seeking $95 million in damages. That case is pending before Judge Gina M. Lopez-Summa.

1

should be dismissed for the following independent and dispositive reasons: (1) the SAC fails to adequately allege the requisite personal involvement of each OCFS Defendant in the purported constitutional violations, *see* Point I, *infra*; (2) all claims grounded directly in the Fourteenth Amendment fail because Plaintiff's exclusive remedy is under 42 U.S.C. § 1983, and these claims are duplicative in any event, *see* Point II, *infra*; and (3) no plausible Fourth Amendment claim has been stated, *see* Point III, *infra*. Further, this case is really premised upon a negligence theory of liability, which is not a viable basis for a Section 1983 action, and it should be litigated in the Court of Claims, where claims for money damages are brought against the State. *See* Point IV, *infra*.[4] The instant motion, therefore, should be granted and this action dismissed.

## STATEMENT OF THE ALLEGED FACTS[5]

BRC is a non-secure residential facility for female, adjudicated juvenile delinquents located at 1230 Commack Road, Dix Hills, New York. *See* https://ocfs.ny.gov/programs/rehab/facilities. The youth residents are generally between the ages of 12 and 18 and are placed with OCFS by New York State Family Courts. *Id. See also*, SAC ¶ 39.

**Allegations of Sexual Assault at BRC**

On November 26, 2022, three days before her 15th birthday, GC was placed at BRC after having been adjudicated a juvenile delinquent by the Suffolk County Family Court. SAC ¶¶ 36-38. During that time, Cannon was employed as a Youth Support Specialist at BRC, having started there in December 2022. *Id*. ¶¶ 2,10. A background investigation of Cannon was conducted prior

---

[4] Inasmuch as the Plaintiff's letter, dated April 15, 2026, filed in response to the OCFS Defendants' request for a pre-motion to dismiss conference specifically states that the OCFS Defendants are not being sued in their official capacities and that *Monell*-style claims are not being asserted in the SAC, DE 58, this Memorandum will not advance an Eleventh Amendment argument herein.

[5] Unless otherwise noted, this Statement of Alleged Facts is taken from the SAC, which is appropriate on a motion to dismiss.

to his hiring by OCFS, and despite having a conviction for Attempted Robbery in 2006, Cannon was cleared for hiring as his conviction did not place him on a Staff Exclusion List maintained by the New York State Justice Center for the Protection of People with Special Needs ("Justice Center"). *Id.* ¶¶ 57, 60.

In December 2022, GC expressed thoughts of self-harm while at BRC and was placed on suicide watch. *Id.* ¶ 44.   For a period of less than two months, Cannon was assigned to guard and monitor GC as a one-to-one aide while she was on suicide watch. *Id.* ¶¶ 2, 49. On or about February 19, 2023, GC revealed that while on suicide watch, Cannon provided marihuana edibles to her and engaged in sexual conduct with her, including intercourse. *Id.* ¶¶ 67, 69. A blood test on February 21, 2023 was given to GC, and it was confirmed that she was pregnant. *Id.* ¶¶ 86, 87. According to the SAC, GC revealed that she was "raped" by Cannon daily; that he had supplied her with edible marihuana; and provided her the use of his cellphone during the time she was monitored by him on suicide watch. *Id.* at ¶¶ 67, 71.   Upon confirmation of the pregnancy, GC was immediately released to the Plaintiff and underwent a clinical abortion in March 2023. ¶ ¶ *Id.* 88, 90.

Cannon was promptly placed on leave on February 21, 2023, and was directed to have no contact with GC. He was formally discharged from BRC's employment on March 4, 2023.  Cannon was thereafter arrested, indicted and pled guilty to several charges, the top count being Rape in the 3rd Degree, a class "E" felony. *Id.* at ¶ 92.  In January 2024, Cannon was sentenced to 2 ½ years' incarceration with 10 years post-release supervision. *Id.* at ¶ 94.

**Justice Center Investigation 2-20-23 - BRC**

The Justice Center investigated the sexual abuse and neglect allegations against Cannon and issued a report of their findings. *Id.* ¶¶ 137, 139.   The Report identified 22 allegations in total

3

against Cannon and BRC – only 3 were substantiated, while 19 were unsubstantiated. *Id.* ¶¶ 137-140.  The three substantiated allegations were: (1) against Cannon for the allegations of sexual abuse of GC; (2) against Cannon for failure to maintain professional boundaries with GC; and (3) for neglect against BRC because of "substantial systemic problems … including inadequate management, training and supervision that exposed GC to harm or risk of harm."  *Id.* ¶¶ 137-140.

**BRC PREA 2022 Audit**

Prior to the Justice Center's investigation of the incident involving Cannon, a Facility Audit Report of BRC was prepared in 2022 by a Department of Justice certified auditor to determine BRC's compliance with federal PREA standards.   *See* SAC ¶ 100; Complaint, DE 1, Exh. 3. The final audit report was submitted on June 12, 2022 and the audit was conducted of BRC for the 12 months prior to that time.  Significantly, over the 12 months audited, no allegations of sexual abuse were investigated at the BRC by the Justice Center, nor were any staff members disciplined for sexual abuse, assault or harassment during that time.  *See id.*, pp. 63, 65.

## **PROCEDURAL HISTORY**

Plaintiff commenced this action on August 21, 2024.  Thereafter, she filed an Amended Complaint, *see* DE 15, which the OCFS Defendants sought to dismiss, *see* DE 21. In addition, because the Amended Complaint included claims regarding alleged misconduct towards GC while she resided at a separate OCFS facility, namely, the Harriet Tubman Residential Center ("HTRC") in Auburn, New York, the OCFS Defendants made a motion to sever those claims.  *See* DE 22.

On March 17, 2025, the claims related to the HTRC were severed by Magistrate Judge Tiscione.  *See* DE 43. Then, on February 18, 2026, Plaintiff filed the SAC, which sets forth the following eleven claims, two of which are brought solely against Cannon (i.e., the Second and

Seventh),[6] and the remaining nine of which, identified below, are brought against various of the OCFS Defendants:

**Claim 1**:    (**42 U.S.C §1983**) Cannon and the OCFS Defendants seized GC in violation of her Fourth Amendment rights by declaring she was suicidal, failing to provide clinical evaluations, keeping her restrained in a room with one-on-one monitoring by Cannon, and allowing Cannon to stay with GC with the bedroom door closed, confining her to her room.  SAC ¶¶ 146, 147.

**Claim 3**:    (**42 U.S.C. §1983**) Cannon and the OCFS Defendants, with the agreement, permission, ratification, knowledge and approval of each other to violate GC's civil rights secured by the Fourteenth Amendment, failed to provide proper medical care, to properly monitor GC and the facility, to prevent Cannon's interactions with GC, to follow the policy and procedure of BRC and OCFS, and failed to train, discipline, inspect and provide security. *Id.* ¶¶ 155, 156.

**Claim 4**:    (**42 U.S.C. §1983**) Sapio, Figueroa, and Austral violated GC's constitutional rights by creating and maintaining unconstitutional customs and practices (failing to discipline, failing to investigate, deliberate indifference), and these customs and practices were a direct and legal cause of harm to GC.  *Id.* ¶¶ 159-167.

**Claim 5**:    (**42 U.S.C. §1983**) Sapio, Figueroa, and Austral as supervisors, violated GC's constitutional rights by creating and maintaining unconstitutional customs and practices (failing to properly train, supervise or discipline employees), and the Defendants acted in a deliberately indifferent manner, at least in part, to avoid liability and financial exposure for BRC, and to maintain the reputation of OCFS. *Id.* ¶¶ 172-178.

**Claim 6**:    (**Fourteenth Amendment**) Sapio, Figueroa, and Austral failed to perform background checks on Cannon prior to his employment and to monitor and supervise Cannon's

---

[6] These claims will not be addressed further herein as they relate solely to Cannon.

care for GC, violating GC's constitutional rights to be free from punishment. This deprived GC of her liberty interest under the Fourteenth Amendment. *Id.* ¶¶ 181, 185-188.

Claim 8:    (**Fourteenth Amendment**) Cannon and the OCFS Defendants failed to protect GC and to properly supervise Cannon, constituting a violation of GC's rights under the Fourteenth Amendment. *Id.* ¶¶ 202-206.

Claim 9:    (**Fourteenth Amendment**) Cannon and the OCFS Defendants failed to protect GC by deliberately failing to keep watch over her and her daily routine. These failures violated GC's Fourteenth Amendment rights to be free from punishment, abuse, the use of drugs and the protection of her bodily integrity. *Id.* ¶¶ 213-215.

Claim 10:    (**Fourteenth Amendment**) Sapio, Figueroa, and Austral failed to implement or enforce policies to protect GC from sexual abuse/assault and doping by Cannon and further, were deliberately indifferent to the serious risk of sexual violence and harassment of GC by Cannon. *Id.* ¶¶ 222, 227.

Claim 11:    (**Fourteenth Amendment**) Sapio, Figueroa, and Austral failed to implement or enforce policies to protect GC from sexual abuse/assault and doping by Cannon and further, created a custom and unspoken policy, through their actions and failures to act, in which they turned a blind eye to warning signs of an improper relationship with and manipulation of GC by Cannon. This deliberate indifference led to the sexual assault of GC. *Id.* ¶¶ 233, 236-238.

## STANDARD OF REVIEW

**Failure to State a Claim**:  To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and some alterations omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft* at 678.

**Lack of Subject Matter Jurisdiction**: A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* at 113. "A party seeking to invoke the subject matter jurisdiction of a Court has the burden of demonstrating that there is subject matter jurisdiction in the case." *Shenandoah v. Halbritter,* 366 F.3d. 89, 91 (2d Cir. 2004), *citing Scelsa v. City Univ. of New York,* 76 F.3d 37, 40 (2d Cir. 1996).

When these standards are applied here, it is clear that the SAC is defective and should be dismissed.

## ARGUMENT

## POINT I

## ALL CLAIMS AGAINST THE OCFS DEFENDANTS SHOULD BE DISMISSED FOR LACK OF PERSONAL INVOLVEMENT

### A.  Personal Involvement is a Prerequisite to an Award Under 42 U.S.C. § 1983

In order to state a claim under Section 1983, a plaintiff must allege that a person, acting under the color of state law, deprived him or her of a federal statutory or constitutional right. *See Gonzaga University v. Doe*, 536 U.S. 273 (2002). "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994), *quoting Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991).  "Failing to allege that a defendant was personally involved in, or responsible for, the alleged constitutional violation renders a complaint 'fatally defective on its face.'" *Jimenez v. Bisram,* 2024 WL 3360340, at \*4 (E.D.N.Y. July 10, 2024), *citing Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987).

The Second Circuit has held "there is no special rule for supervisory liability" for claims under 42 U.S.C. § 1983. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  Instead, a plaintiff asserting any cause of action under Section 1983 must "plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id*. (*quoting Iqbal*, 556 U.S. at 676).  To this end, a "plaintiff is obligated to set forth allegations of personal involvement by each named defendant in his complaint, and may not meet this obligation with conclusory allegations," and must "set forth specific allegations of wrongdoing as to each individual in the body of his complaint." *Purdie v. Mahoney*, 2005 WL 3050969, at \*1 (N.D.N.Y. Nov. 14, 2005).  Succinctly stated, "[t]o be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law."

8

*Nicholson v. Hammond*, 2016 WL 3369286, at \*5 (N.D.N.Y. May 19, 2016) (internal quotation marks omitted), *adopted*, 2016 WL 3365442 (N.D.N.Y. June 16, 2016); *Banks v. Annucci,* 48 F. Supp. 3d 394, 417 (N.D.N.Y. 2014) ("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.").

In the same vein, a defendant is not liable for a constitutional violation merely because they hold a high position of authority in an agency. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). *See also Gibson v. Pasta City,* 2023 WL 8188431, at \*5 (S.D.N.Y. Nov. 27, 2023) ("[a]n individual state actor defendant may not be held liable under §1983 solely because that individual employs or supervises a person who violated the plaintiff's rights.") (internal citations omitted); *Doe v. Alsaud*, 12 F.Supp.3d 674, 677 (S.D.N.Y. 2014) (recognizing that New York courts have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context, meaning that the employer would not be liable under a *respondeat superior* theory for the employee's actions). Broad, conclusory allegations that a high-ranking defendant was informed of an incident are also insufficient. *See, e.g., Partee v. Grood,* 2007 WL 2164529 at \*19 (S.D.N.Y. July 25, 2007) (a prison official "cannot be held liable on the sole basis that he did not act in response to letters of protest. . . .") (citations omitted).

Additionally, and particularly pertinent to this case, group pleading, where all defendants are lumped together, is not permitted. *See* Fed. R. Civ. P. Rule 8(a); *see, e.g., Hanks v. City of Syracuse,* 2022 WL 4619877, at \*3 (N.D.N.Y, Sept. 30, 2022) (dismissing claims asserted against all defendants where plaintiff "makes no attempt to attribute any specific conduct to any individual defendant ... [and] the court has no indication as to what, if any, conduct [plaintiff] bases his claim

9

on ..."); *Abreu v. Bascue,* 2018 WL 11466956, at \*9 (N.D.N.Y. May 1, 2018) ("The Court is therefore unable to evaluate which of the officials listed by plaintiff, if any, might have been personally involved in a constitutional deprivation...."); *Corazzini v. Litton Loan Servicing LLP,* 2010 WL 1132683, at \*10 (N.D.N.Y., Mar. 23, 2010) ("[t]he complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted"); *Zalewski v. T.P. Builders, Inc.,* 2011 WL 3328549, at \*5 (N.D.N.Y. Aug.2, 2011) ("The court will not accept ... vague group pleading to serve as a basis for liability); *see also Atuahene v. City of Hartford,* 10 F. App'x 33, 34 (2d Cir. 2001) (explaining that "lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" fails to satisfy minimum "fair notice" standard of Rule 8).

## B. The SAC Fails to Adequately Allege Personal Involvement by Any OCFS Defendant

When the above principles are applied to this case, it is clear that a dismissal is appropriate because the SAC is entirely devoid of factual allegations sufficiently showing that the OCFS Defendants were directly and personally involved in any constitutional deprivation of GCs rights. *See Smolen v. Wesley,* 2019 WL 4727311, at \*5 (S.D.N.Y. Sept. 25, 2019) (claims against two of four defendants dismissed as mere knowledge or acquiescence of a constitutional violation with no specific details offered as to their personal involvement was deemed insufficient).

Indeed, Plaintiff makes absolutely no attempt to attribute specific conduct to any OCFS Defendant. Two of the OCFS Defendants (i.e., Johnson and Chin) are not even mentioned in any of the claims and none of the claims identify the particular conduct allegedly engaged in by those OCFS Defendants who are supervisors (i.e., Figueroa, Sapio, and Austral), nor do they differentiate among them. Instead, the SAC employs improper group pleading, forcing the OCFS

10

Defendants and this Court to employ guesswork to determine who is being sued for what alleged wrongdoing. This pleading style, if allowed, offers Plaintiff a shortcut around the well-settled pleading standards set forth in the Second Circuit cases, which require a plausible pleaded fact on *each* element of the underlying constitutional violation that, if true, would implicate their personal involvement and otherwise allow a finding of liability against the OCFS Defendants. *See Tangreti*, 983 F.3d at 620.

### i.       *Johnson and Chin Lack Personal Involvement*

The SAC is entirely devoid of any allegations whatsoever demonstrating that Johnson and Chin were personally involved in harm to GC. The SAC merely references Johnson's job title as a caseworker and that Plaintiff notified Johnson of GC's claims **after** GC told her of Cannon's misconduct. *See* SAC ¶¶ 11, 72. As to Chin, the SAC does nothing more than allege that she is a registered nurse at BRC. *See id.* ¶ 15. Beyond that, however, there are no allegations whatsoever demonstrating, for example, that either Johnson or Chin: (1) directly participated in any alleged constitutional violation; (2) were informed of GCs claims as the misconduct was happening and failed to take action to remedy the wrong; (3) created any policy or custom under which unconstitutional practices occurred; (4) were responsible in supervising any employee that committed a wrongful act; or (5) were deliberately indifferent to GC by failing to act on information that GC was the subject of harm.

Because there are no allegations in the SAC showing that Johnson and Chin were personally involved in any alleged wrongdoing, they must be dismissed as defendants. *See, e.g., Coleman v. Cuomo*, 2018 WL 11691448, at *5 (N.D.N.Y. May 14, 2018) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citations omitted); *Crown v. Wagenstein*, 1998 WL

11

118169, at *1 (S.D.N.Y. Mar. 16, 1998) (mere inclusion of warden's name in complaint insufficient to allege personal involvement); *see also Aramony v. United Way of Am.,* 949 F. Supp. 1080, 1082 (S.D.N.Y. 1996) (a dismissal is warranted where, as here, "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.") (*quoting Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).

### ii.    *Austral Lacks Personal Involvement*

The SAC also contains no factual allegations that attribute any specific wrongdoing to Austral.  Instead, the pleading sets forth conclusory allegations to the effect that Austral failed to enforce federal standards and/or correct existing alleged unconstitutional policies at BRC.  But the SAC presents no facts indicating Austral's personal involvement in any constitutional violation. In essence, Plaintiff seeks to hold Austral liable based solely on her title as BRC's PREA Compliance Manager; liability, however, cannot be imposed on this basis. *Landron v. City of N.Y.,* 2014 WL 6433313, at *4 (S.D.N.Y. Nov. 7, 2014) ("[C]laims against an official based solely on the fact that she occupies a high position ... and supported by only conclusory allegations of her personal involvement are insufficient to state a claim.") (alteration and internal quotation marks omitted).

While the SAC lumps Austral together with the other supervisory defendants, alleging that collectively they violated the Plaintiff's constitutional rights, without differentiating the roles each person played in causing the harm to GC, this is insufficient. *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2023) ("[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal."); *see also* Point I, B, iii, *infra*.  Austral, therefore,  should be dismissed as a party-defendant.

12

### iii.    *Figueroa and Sapio Lack Personal Involvement*

Plaintiff's allegations against Figueroa and Sapio are brief, vague and also do not specify any specific misconduct attributed to each defendant individually. Rather, the SAC sets forth their purported responsibility under the doctrine of *respondeat superior,* alleging that these defendants are liable for what amounts to negligence in hiring, retaining, training, and supervising Cannon, and Plaintiff seeks to hold Figueroa and Sapio liable presumably by reason of their supervisory positions, which is not allowed. *See, e.g.*, SAC ¶¶ 53, 123-134; *Coleman v. Cuomo, supra* at \*12, *citing Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sep. 15, 1997) ("the doctrine of respondeat superior cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement" and "[t]herefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control." *Id.)*

Further, the SAC lumps the purported wrongful conduct of supervisors Figueroa and Sapio, as well as Austral, together in **all** claims.  *See* SAC, Claims 1, 3-6, 8-11.  And the SAC provides no factual basis to distinguish their conduct individually. For example, the SAC alleges that: Cannon placed GC on suicide watch (SAC ¶ 45);  GC was not evaluated by a mental health professional (SAC ¶ 48); and a decision was made that Cannon would be GC's one-on-one aide (SAC ¶ 114).   There is no mention of any of the supervisory OCFS Defendants whatsoever in connection with these events.  Notwithstanding the latter, the SAC then impermissibly groups all the OCFS Defendants together and seeks to hold them collectively liable for those very events. *See, e.g.*, SAC, ¶ 146 ("The defendants seized GC by declaring that she was suicidal, failing to provide clinical evaluations, and thereby keeping her restrained in a room with one-on-one monitoring by Cannon); *id*. ¶ 156 ("The Defendants failed to provide medical care, failed to properly monitor both GC and the facility, failed to prevent Cannon from his interactions with GC

13

which were visible and obvious, failed to follow the policy and procedure of both the BRC and OCFS, failed to train, failed to discipline, failed to inspect and provide security, and attempted to prevent outside knowledge of their actions by keeping any corrective action 'In house".).

This improper group pleading means that the SAC is entirely deficient and must be dismissed as to Figueroa and Sapio. *See Wright v. Orleans County,* 2015 WL 5316410, at \*14 (W.D.N.Y. Sept. 10, 2015) (Plaintiff's failure to specify against which moving Defendants the claims were pled required dismissal as to those Defendants). *See also Jeffery v. City of New York,* 2022 WL 204233, at \*4 (E.D.N.Y. Jan. 24, 2022) (finding a complaint failed to state a claim because the "undifferentiated group pleadings ... [were] inadequate to allege either direct participation or policy-making involvement").[7]

### *iv.    To the Extent that the SAC Alleges that the OCFS Defendants Acted with Deliberate Indifference to GC's Constitutional Rights, Any Such Claim Fails for the Same Reason, i.e., Lack of Personal Involvement*

While the SAC sounds almost completely in negligence, *see* Point IV, *infra*, to the extent that Plaintiff also purports to hold the OCFS Defendants liable for being deliberately indifferent to GC's constitutional rights, *see, e.g*., ¶¶ 165, 176, it is defective on its face.  Specifically, the SAC fails to plead facts that establish deliberate indifference, much less the required *mens rea.* Regarding the latter, to allege that a defendant had a sufficiently culpable state of mind, a plaintiff must show that the defendant knew of, or should have known of, and disregarded, an excessive risk to her health or safety.  *See Darnell v. Pineiro,* 849 F.3d 17 (2d Cir. 2017).

---

[7] Aside from the group pleading, which in and of itself warrants dismissal, a review of the SAC reveals other deficiencies, including that many of the allegations in the SAC set forth conduct that purportedly occurred **after** GC disclosed the abuse by Cannon. *See* SAC ¶¶ 75-84, 156.  But "allegations that a supervisor did not do enough *after* a constitutional violation has already occurred is not enough to show personal involvement of the supervisor in the violation of a prisoner's constitutional rights." *Weston v. Bayne,* 2023 WL 8435998, at \*6 (N.D.N.Y. June 28, 2023), *report and recommendation adopted,* 2023 WL 8183219 (N.D.N.Y. Nov. 27, 2023).

14

Other than pleading that the OCFS Defendants collectively were deliberately indifferent to the risk of sexual violence to GC, the SAC fails to address *how* the OCFS Defendants specifically acted and in what way they were indifferent, *what* the substantial risk of harm was, and *who* was aware of the risk. Likewise, Plaintiff has failed to allege facts to show that any OCFS Defendant acted with a culpable state of mind.  Plaintiff's vague claim that the staff should have been aware that GC was deemed a human trafficking victim and thus was at risk for sexual abuse, does not establish that the OCFS Defendants knew that *Cannon* posed a threat to GC. And the lack of any factual allegations in the SAC concerning the Defendants' knowledge of Cannon's purported propensity for sexual assault is fatal to the claim and warrants dismissal. Certainly, the fact that Cannon was previously convicted of attempted robbery would not have put Defendants on such notice. *See Doe v. Alsaud*, 12 F. Supp. 3d at 681  ("The prior misconduct ... must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient.").

Similarly, the allegation that Cannon's grooming of GC should have been obvious to anyone with proper eyesight or to anyone with access to surveillance cameras also does not demonstrate deliberate indifference. That is because the SAC includes no factual details demonstrating that any OCFS Defendant knew of the dangers to GC yet refused to remedy the situation.  *LaBounty v. Coughlin,* 137 F.3d 68, 72-73 (2d Cir. 1988) ("To succeed in showing deliberate indifference, [a plaintiff] must show that the acts of the defendants involved more than a lack of due care, but rather involved obduracy and wantonness in placing his health in danger."). Thus, Plaintiff's attempt to raise a deliberate indifference claim fails on its face and must be dismissed.

15

**POINT II**

**THE CLAIMS GROUNDED DIRECTLY IN THE FOURTEENTH AMENDMENT MUST BE DISMISSED BECAUSE SECTION 1983 PROVIDES THE EXCLUSIVE REMEDY AND, IN ANY EVENT, THOSE CLAIMS ARE DUPLICATIVE**

The SAC purports to bring numerous claims directly under the Fourteenth Amendment, *see* SAC Claims 6, 8-11, but all these claims must be dismissed because 42 U.S.C. § 1983 is the "exclusive federal remedy for violations of constitutional rights" against those acting under color of state law. *Murray v. New York*, 2025 WL 370886, at *4 (S.D.N.Y. Feb. 2, 2025). The Second Circuit has long held that "when [Section] 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available." *Pauk v. Bd. of Trustees of City Univ. of New York*, 654 F.2d 856, 865 (2d Cir. 1981). This principle applies here and warrants dismissal of Claims Six and Eight through Eleven.

While the Court need go no further in dismissing these claims, it is also worth noting that the Fourteenth Amendment claims are largely duplicative of the Section 1983 claims. "Duplicative claims shall be dismissed when they are based on identical conduct and seek the same relief." *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Or., Inc.*, 156 F. Supp. 3d 348, 362 (E.D.N.Y. 2016); *Cooper v. Cook*, 2020 WL 1923233, at *5 (D. Conn. Apr. 21, 2020) (dismissing claim "as duplicative" because it did "nothing more than restate" plaintiff's other claim asserted in the same action). For example, Claims Six, Eight, and Nine contain the same allegations and verbiage of "failing to protect" and "failing to supervise" as Claims Three through Five allege. SAC ¶¶ 188, 202, 215, 216. As another example, Claims Ten and Eleven both allege that the OCFS Defendants were deliberately indifferent and failed to implement and enforce policies to protect GC from sexual abuse by Cannon. SAC ¶¶ 222, 227, 234, 237. These two Claims are not only duplicative of one another, they are also duplicative of Claims Three, Four and Five. The

16

same is true with regard to Plaintiff's due process claims, which appear in Claims Six and Eight through Eleven, as well as in Claims Three, Four, and Five. Thus, even if Section 1983 was not the exclusive remedy, which it is, the claims grounded in the Fourteenth Amendment should be dismissed as duplicative. *See Verdon v. Consolidated Rail Corp.,* 828 F. Supp. 1129, 1136 (S.D.N.Y. 1993) (dismissing due process claim directly under the Fourteenth Amendment as "duplicative, and therefore frivolous," where complaint also asserted a §1983 due process claim).

## POINT III

## NO PLAUSIBLE FOURTH AMENDMENT CLAIM HAS BEEN STATED

The SAC alleges that GC's Fourth Amendment rights were violated when the "OCFS Defendants" confined her to her room and kept her restrained there by virtue of the one-on-one monitoring by Cannon. SAC ¶¶ 146-148. At the outset, as discussed above, each Defendant can only be liable for his or her own actions, and the SAC entirely fails to articulate how each of them personally violated Plaintiff's constitutional Fourth Amendment rights, meaning that no plausible Fourth Amendment claim has been stated against any OCFS Defendant. *See Iqbal*, 556 U.S. at 676.

Next, Plaintiff's Fourth Amendment claim fails because there was no unlawful "seizure" as GC was confined to BRC pursuant to a valid Family Court Order. SAC ¶¶ 36-37. *See Grullon v. Admin. for Children's Servs.*, 2021 WL 981848, at *8 (S.D.N.Y. Mar. 16, 2021) ("Generally, the removal of a child from his parents' custody is reasonable, for purposes of the Fourth Amendment, if it is effectuated pursuant to a court order."). And even if GC could somehow be considered as "seized" when she was placed on one-to-one monitoring, the Fourth Amendment claim still fails. GC was allegedly placed on one-to-one monitoring because she was suicidal and expressed thoughts of self-harm, *see* SAC ¶44, 49, and there are no facts to show that this action

17

was unreasonable given this suicide concern or that any OCFS Defendant knew or should have known that GC would have been subjected to sexual abuse by a rogue employee while on suicide watch. *Grullon, supra* at *8 (granting motion to dismiss Fourth Amendment claim). Thus, the Fourth Amendment claim should be dismissed.

## POINT IV

### THE SAC ALLEGES MERE NEGLIGENCE, WHICH IS NOT A VIABLE BASIS FOR A §1983 CLAIM

Mere negligence does not support a constitutional claim under Section 1983. *See, e.g.*, *Daniels v Williams*, 474 U.S. 327, 331-32 (1986) (holding that a negligent deprivation does not trigger the requirements of due process). Claims for negligence may arise under state law, but not in federal court. *See, e.g.*, *Gibson v. Pasta City*, *supra* at *3 ("The negligence of a state official is not a viable basis for a claim of a federal constitutional violation under Section 1983."). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro v. Cty of Los Angeles,* 833 F.3d 1060, 1071 (9th Cir. 2016), *quoting Daniels,* 474 U.S. at 330-31. "[T]he plaintiff must 'prove more than negligence but less than subjective intent - something akin to reckless disregard.'" *Gordon v. County of Orange,* 888 F.3d 1118, 1125 (9th Cir. 2018), *cert. denied* 139 S. Ct. 794 (2019) (*quoting Castro,* 833 F.3d at 1070).

Here, there are no facts alleged in the SAC as would support the conclusion that any OCFS Defendant acted with a reckless disregard for GC's constitutional rights. *See* Point II, B, iv, *supra*. Rather, the entirety of the SAC is that the Defendants collectively were negligent in their responsibilities. *See, e.g.,* SAC ¶ 182 ("In performing the required background checks, but then employing Cannon anyway, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from punishment."); SAC ¶ 202 ("In not properly

18

supervising or overseeing Cannon's care for GC, Defendants operated in an unreasonable manner and violated GC's clearly established constitutional right to be free from punishment, abuse, the use of drugs and protection of her bodily integrity."); SAC ¶ 223 ("Defendants failed to prevent Cannon from interacting with GC without adequate camera coverage, recording instruments or supervision."). Because this case is nothing more than one sounding in negligence, it should be dismissed, and Plaintiff should be required to litigate the matter in the Court of Claims, where she has a pending matter.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the SAC be dismissed in its entirety.

Dated:  Hauppauge, New York
        May 22, 2026

LETITIA JAMES
Attorney General for the State of New York
Attorney for the OCFS Defendants

By: *Dana E. Brown*
    Dana E. Brown
    Assistant Attorney General
    300 Motor Parkway, Suite 230
    Hauppauge, New York 11788
    Dana.Brown@ag.ny.gov

19

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

In accordance with the Local Rule for the U.S. District Court for the Eastern District of New York 7.1, the undersigned certifies that the word count in this Memorandum of Law (excluding the caption, table of contents, table of authorities, signature block, and this certification), as established using the word count on the word-processing system used to prepare it, is 5,938 words.

Dated: Hauppauge, New York
      May 22, 2026

By:    *Dana E. Brown*
           DANA E. BROWN
           Assistant Attorney General